UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 23-14516-JGR |
| THE PAD SILVERTHORNE, LLC ) | |
| ) | Chapter 11 |
| ) | |
| Debtor. ) | |

**OBJECTION TO MOTION TO APPOINT CHAPTER 11 TRUSTEE
PURSUANT TO 11 U.S.C. § 1104**

The Debtor and Debtor-in-Possession, The PAD Silverthorne, LLC ("Debtor" or "The PAD"), by and through its attorneys, Kutner Brinen Dickey Riley, P.C., states its Objection to the Motion to Appoint Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104 ("Trustee Motion") as follows:

**BACKGROUND**

**A. *Development of The PAD Silverthorne***

1. The Debtor filed its Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on October 4, 2023 (the "Petition Date").

2. The Debtor owns and, on a pre-petition basis, was operating a unique concept hotel/hostel known as The PAD located in Silverthorne, Colorado. Robert and Lynne Baer are the owners and operators of the Debtor.

3. While appearing on its surface to be another hotel accommodation in a mountain town in Colorado, at its core The PAD is a unique concept for Silverthorne.

4. The PAD was conceived approximately ten years ago, when Mrs. Baer, who was working in real estate development at the time, stayed in a new hotel/hostel accommodation in her international travels and recognized that a concept property that combined hostel accommodations for younger travelers with hotel type accommodations for travelers that were looking for a more traditional stay could be profitable in a place like Silverthorne, where there is a high demand for accommodations ranging across budgets for those looking to enjoy Colorado's mountain playgrounds.

5. Prior to founding The PAD, Mrs. Baer also managed a hostel in Costa Rica, gaining a deeper understanding of the intricacies required in running a hostel as opposed to a traditional hotel.

6. In 2017, Mr. and Mrs. Baer formed The PAD to develop and build a hotel/hostel accommodation in Silverthorne, Colorado. In developing The PAD, Mr. and Mrs. Baer changed the business model from one that was traditionally centered on frequent travel, such as hostels typically found in Europe or South America, to one that was more centered around community because of the unique nature of Silverthorne. The development proposal further focused on environmental responsibility, using recycled shipping containers for part of the property and ensuring energy efficiency and green policies.

7. After acquiring the real property located at 491 Rainbow Drive ("Property"), the Debtor broke ground on the construction of the hotel/hostel in late November 2019.

8. While construction was initially budgeted to take approximately fourteen (14) months, the Debtor encountered issues in the construction process that caused significant delays in the property opening. Comments and requested changes from the Town of Silverthorne were not communicated to the structural engineer, requiring significant changes to the property after construction was already underway. The Debtor further experienced additional delays in the construction process caused by COVID and subsequent supply chain issues that plagued property development projects throughout 2020.

9. The hotel/hostel ("Hotel") opened for business in approximately November 2021, after approximately 20 months of construction. In its finished form, the Hotel boasts 36 rooms and 101 beds, with rooms ranging from private suites and traditional hotels rooms to dorm-style rooms and micro rooms. The Hotel also has a number of gathering rooms and meeting rooms for rent by guests, as well as expansive outdoor decks with hot tubs and outdoor recreational areas. The lobby also features the A-BAR, a bar and restaurant owned and operated by The PAD's wholly owned subsidiary, A-BAR CO, LLC.

10. Since opening, the Hotel has been a popular destination for travelers of all ages, offering budget-friendly accommodations with luxurious touches and expansive amenities for guests, gradually growing in both occupancy rates and revenue per guest.

11. Pre-petition, Mr. and Mrs. Baer operated the Hotel up until the appointment of a receiver in September 2023. Under their management, the Hotel earned a number of awards and accolades, including being voted as the best place to stay in Summy County, Colorado in 2022.

12. The Debtor has further pursued a B-Corp certification, a program which certifies that businesses have a high standard of social and environmental performance, accountability, and transparency. The PAD received its certification in August 2023, and was the first Colorado hotel to receive the certification as well as the first business in Summit County to receive the certification.

13. Despite the growing operations, the significant delays experienced during construction caused a financial strain to the Debtor's operations and, as a result, the Debtor defaulted on its loans, ultimately resulting in the appointment of a receiver in September 2023, and the Debtor's filing of its voluntary petition on October 4, 2023 in order to restructure its debt and remain in operation as a going concern.

### B. *Pre-Petition Receivership & Receivership Operations*

14. Pre-petition, as a result of the Debtor's ongoing financial difficulties, the Debtor defaulted on its payments to BRMK.

15. In order to resolve its ongoing issues with BRMK, the Debtor attempted to negotiate a settlement and refinance of the amount owed to BRMK, but was ultimately unsuccessful in doing so.

16. On September 14, 2023, the District Court for Summit County, Colorado entered its Order Appointing Receiver in Case Number 2023CV30113, appointing Jeffrey Kolessar of GF Hotels as receiver ("Receiver") over the Hotel and the Debtor's operations therein (the "Receivership Order").

17. After the Receiver took over operations of the Hotel, the Receiver was in control of all aspects of the company, including tax filings, vendor payments, and operation decisions until possession of the Hotel was returned to the Debtor in December 2023.

18. The transitional process caused operational difficulties for the Debtor, as there was confusion over what had been done in the Hotel and what actions needed to be taken, as well as what payments had been made and what remained outstanding. Moreover, because the Receiver transitioned vendor accounts to new accounts and transitioned staff and tax matters to a different

tax identification number, there was additional turmoil in getting accounts and tax matters transitioned back to the Debtor at a key time during operations.

19. The turmoil of two transitions in management of the Hotel and changing over accounts and tax information caused an operational strain on the Debtor, causing a lapse in tax filing and oversight on the filing of monthly operating reports.

20. Since the transition of operations back to the Debtor, the Debtor has been attempting to effectuate a refinance of the BRMK debt on the property in order to propose a plan of reorganization. The Debtor has thus far been unable to do so, and has begun to explore other options, including a sale of the Property through CBRE.

21. The Committee now seeks to appoint a Chapter 11 Trustee, asserting that to date the Debtor has been unable to confirm or effectuate a Plan of Reorganization. As set forth more fully herein, the appointment of a Chapter 11 Trustee will do nothing more than add a layer of administrative expenses and make it more difficult for the Debtor to refinance or sell the Property, ultimately resulting in worse results for unsecured creditors and is therefore not in the best interest of the estate or the creditors.

## LEGAL ARGUMENT

22. Pursuant to 11 U.S.C. § 1104(a)(1), the court may order the appointment of trustee for "cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management[.]"

23. The appointment of a trustee is an extraordinary remedy. *In re Colorado-UTE Elec. Ass'n*, 120 B.R. 164, 173 (Bankr. D. Colo. 1990). "There is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee." *Id.* (internal quotations omitted) (citing *In re Ionosphere Clubs, Inc. (Eastern Airlines)*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990)).

24. Generally, the appointment of a trustee "should be the exception, rather than the rule . . . ." *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 655-56 (Bankr. S.D.N.Y. 2006). The burden is on the moving party to establish by clear and convincing evidence that cause exists to appoint a trustee. *Id.*

25. When considering whether "cause" exists for appointment of a trustee, the focus is on the post-petition activities of the debtor-in-possession, not past misconduct. *In re Sletteland*, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001). "Speculation that a debtor may do something in the

future does not overcome the strong presumption that the debtor should be permitted to remain in possession in a chapter 11 case or justify the additional cost of a trustee." *Id.*

26. Looking to the Debtor's post-petition operations, cause does not exist for appointment of a Chapter 11 Trustee.

27. The Committee complains about the Debtor's failure to timely file post-petition monthly operating reports, but fails to take into consideration that the Debtor was out of possession of the Hotel for the first several months of the case. Upon taking over operations again, the Debtor had to transition back all of its books and records and gain an understanding of the Debtor's finances post-receivership. This caused a delay in the Debtor's filing of the reports that the Debtor has since cured.

28. The Debtor is currently only behind one monthly operating report, and will be current prior to any hearing on the Trustee Motion.

29. Moreover, not filing monthly operating reports on time is not "gross mismanagement" that warrants the extraordinary remedy of appointing a trustee.

30. The Committee further complains that the Debtor only showed a small profit during one of the busier months during the winter season. This again fails to take into account the effect of the Receiver's possession of the Hotel immediately preceding the busy season. While the receiver was no doubt well qualified to manage a typical hotel, it was not as familiar with the Debtor's boutique hotel/hostel type operations, resulting in a decrease in business and limited marketing during the Receiver's operation of the Hotel. The turmoil of the transition in operations twice in a short period of time further resulted in a decrease in operations and revenue. As a result, the Debtor's revenue struggled to recover as a result of the same forces that resulted in its bankruptcy filing.

31. As with the late filed monthly operating reports, this does not equate to "gross mismanagement" of the Debtor. Indeed, Mr. and Mrs. Baer were able to retake operation of the Hotel quickly and turn around operations to become profitable, even while servicing a sizeable adequate protection payment to BRMK. It is only because of their management of the Hotel that the Debtor was able to have any profit, even during a typically busy month. With operations back in the Debtor's control, the Debtor will likely continue to grow its operations and be profitable in the next busy season.

32. The Committee further complains that the Debtor has selectively chosen to pay pre-petition creditors. This is incorrect. Its subsidiary entity, A-Bar, has paid its expenses as it is required to do, including food vendors and liquor distributors. A-Bar is not in bankruptcy, and is not subject to the same restrictions as a debtor-in-possession. The Debtor has not paid any of its pre-petition debts at any point post-petition.

33. The Committee finally points to the Debtor's inability to propose a Plan or obtain refinancing as cause to appoint a Chapter 11 Trustee. Instead, these factors further evidence that appointing a Chapter 11 Trustee will do nothing more than add a layer of administrative expenses to the estate, while providing no benefit to unsecured creditors.

34. The Committee has no basis to believe that a Chapter 11 trustee would be better able to obtain financing to resolve the BRMK debt than the Debtor would be. Nor would a Chapter 11 trustee be better able to proceed with a sale or propose a Plan of Reorganization, as a newly appointed trustee would have to take additional time to learn about the asset, retain professionals, and proceed with a sale. In contrast, the Debtor has already identified qualified professionals and has the knowledge of the Property and the Hotel necessary to proceed with a successful refinance.

35. Appointing a Chapter 11 Trustee would add a significant additional layer of administrative expenses with no additional benefit to the estate. The Receiver has already filed a Motion seeking approval of an administrative expense claim in excess of $270,000. There will also be administrative expense claims for Committee professionals and the Debtor's professionals. Adding another substantial administrative expense claim while delaying any sale or refinance process that could have the potential to repay unsecured creditors serves only to harm the estate while providing no additional benefit.

36. The Committee has failed to establish cause for appointing a Chapter 11 Trustee, and has pointed to no evidence of gross mismanagement, dishonesty, or incompetence. Because they have failed to establish cause for appointment of a Trustee, the Trustee Motion must be denied.

**[remainder of page intentionally left blank]**

WHEREFORE, the Debtor prays the Court make and enter an Order denying the Trustee Motion and for such further and additional relief as to the Court may appear just and proper.

Dated: July 8, 2024                 Respectfully submitted,

By: */s/ Keri L. Riley*
Keri L. Riley #47605
**KUTNER BRINEN DICKEY RILEY, P.C.**
1660 Lincoln Street, Suite 1720
Denver, CO 80264
Telephone: (303) 832-2400
E-Mail: klr@kutnerlaw.com